UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Best Management Products, Inc.

     v.                                                Civil No. 07-151-JL
                                                             Opinion No. 2008 DNH 099
New England Fiberglass, L.L.C.
and Mark Richardson


**O R D E R**

The plaintiff, Best Management Products, Inc. ("BMP")
alleges that the defendants, New England Fiberglass and Mark
Richardson, its president and sole owner, (collectively, "NEF"),
are infringing BMP's patent for an oil and debris separator to be
installed in a catch basin, United States Patent No. 6,126,817
(filed Oct. 3, 2000).  The parties differ over the meaning of the
phrase "a vent mounted on the wall of said hood and extending
upwardly therefrom" as it appears in independent claims 1, 5-6,
10, and 15 of the patent.  The court received briefing and
conducted a hearing on this issue in accordance with Markman v.
Westview Instruments, Inc., 517 U.S. 370, 388 (1996).[1]

---

[1]The parties had initially submitted a series of back-and-
forth briefing, including a number of replies and sur-replies,
all of which was stricken by the court when each side was ordered
to submit a single brief setting forth all of its claim
construction arguments.

This court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (2006) (patents).  For the foregoing reasons, the court adopts--with some deletions and modifications--NEF's proffered interpretation of the disputed phrase, construing it to mean:

> a separate hollow fitting affixed to the wall of said hood, said fitting having a lower end communicating with a hole in the wall of the outlet hood and an upper end extending upwardly from said hood to a position above said hood.[2]

## I.  **APPLICABLE LEGAL STANDARD**[3]

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004).  The meaning of language in a patent claim presents a question of law

---

[2]In construing a patent, this court's "task is not to decide which of the adversaries is correct" in its proffered interpretation, but to fulfill the court's "independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties." <u>Exxon Chem. Patents, Inc. v. Lubrizol Corp.</u>, 64 F.3d 1553, 1555-56 (Fed. Cir. 1995).

[3]These principles were discussed with reference to nearly the same authorities in this court's claim construction order in <u>Velcro Indus. B.V. v. Taiwan Paiho Ltd.</u>, 2005 DNH 035, 1-3. Because the parties agree that these principles are controlling, what follows is an essentially verbatim quotation from that order.

for the court to decide.  <u>Markman</u>, 517 U.S. at 388.  In the absence of an express intent to impart a novel meaning to the claim terms, the words take on the full breadth of the ordinary and customary meanings attributed to them by those of ordinary skill in the art.  <u>See</u>, <u>e.g.</u>, <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1360 (Fed. Cir. 2004), <u>cert. denied</u>, 126 S. Ct. 2976 (2006); <u>Tate Access Floors, Inc. v. Interface Architectural Res., Inc.</u>, 279 F.3d 1357, 1370 (Fed. Cir. 2002).

To ascertain this meaning, the court must first examine the intrinsic evidence, which includes the claims themselves, the specifications, and any prosecution history submitted by the litigants.  <u>E.g.</u>, <u>Goldenberg v. Cytogen, Inc.</u>, 373 F.3d 1158, 1164 (Fed. Cir. 2004) (citing <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The court starts with the actual language of the claim.  <u>E.g.</u>, <u>Int'l Rectifier Corp. v. IXYS Corp.</u>, 361 F.3d 1363, 1370 (Fed. Cir. 2004); <u>3M Innovative Props. Co. v. Avery Dennison Corp.</u>, 350 F.3d 1365, 1370 (Fed. Cir. 2003).  "If the claim language is clear on its face, then [the] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified."  <u>Interactive Gift Express, Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1331 (Fed. Cir.

3

2001); <u>see also</u> <u>Int'l Rectifier</u>, 361 F.3d at 1370; <u>Anchor Wall</u>
<u>Sys., Inc. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298,
1306-1307 (Fed. Cir. 2003).

Although the court must therefore construe the claims in
light of the specifications, it must take care not to read
limitations from the specifications into the claims.  <u>Innova/Pure</u>
<u>Water</u>, 381 F.3d at 1117; <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>,
358 F.3d 898, 904 (Fed. Cir. 2004).  "If the meaning of the claim
limitations is apparent from the totality of the intrinsic
evidence, then the claim has been construed."  <u>Interactive Gift</u>,
256 F.3d at 1332.  If, and only if, a "genuine ambiguity" still
persists, the court may turn to extrinsic evidence, such as
expert testimony, to interpret the claim.  <u>Intel Corp. v. VIA</u>
<u>Techs., Inc.</u>, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (citing
<u>Vitronics</u>, 90 F.3d at 1582); <u>see also, e.g.,</u> <u>Sunrace Roots Enter.</u>
<u>Co. v. SRAM Corp.</u>, 336 F.3d 1298, 1307 (Fed. Cir. 2003).

## II.  **<u>BACKGROUND</u>**

BMP holds an assignment of the patent-in-suit from its
inventors, Lee A. Duran and Thomas J. Mullen III; Mullen, one of
BMP's principals, accompanied its counsel at the <u>Markman</u> hearing.
The patent discloses "a trap which is installed in . . . catch
basins, storm drains and the like and which traps floatable

debris and liquids of specific gravities that are different from
that of water," particularly oil.  '817 patent, col.1, l.10-14.
While existing technology had achieved this effect through "a
complicated structure including a plurality of separating
partitions," the patented invention employs "a separating
structure that is relatively easy to install into a existing
catch basin while enabling maintenance of the outlet pipe through
which filtered water is discharged."  Id., col.2, l.5-17.

     The invention contemplates a hood which "is sealably mounted
to the basin wall around its outlet and extends downwardly below
it to prevent materials such as oil and floatable debris from
being drawn downstream into the outlet."  Id., col.2, l.63-66.
Of crucial relevance to the dispute between the parties, "[a]n
anti-siphon vent extends up from the hood . . . to equalize air
pressure between the compartment enclosed by the hood and ambient
air above the basin."  Id., col.3, l.1-3.  As Mullen explained at
the Markman hearing, this vent thus serves to prevent materials
floating inside the basin above the bottom of the hood from
nevertheless being sucked underneath it as the water in the basin
seeks its own level by filling the airspace inside the hood.
So the patent claims, in relevant part:

          a hood extending along an axis, and having a wall
          shaped to partially sealingly fit around the outlet of
          an interior wall of the waste water basin so as to

> define at least a partially sealable compartment
> therewith . . . [and]
>
> a vent mounted on the wall of said hood and extending
> upwardly therefrom, the vent opening into the
> compartment to provide air communication with the
> compartment upon mounting of the hood to the interior
> wall of the waste water basin to inhibit siphoning of
> [the] water mixture from inside said waste water basin
> through said compartment into said outlet.

Id., col.7, l.34-47 [claim 1].[4]

BMP claims that NEF is infringing on the patent by marketing
its own hooded outlet covers; NEF denies this and has
counterclaimed, asserting that its products do not infringe, that
the patent is invalid, and that BMP has maintained this suit as
an illegal attempt at a monopoly in violation of New Hampshire's
Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A.  NEF
contends that the disputed claim language--"a vent mounted on the
wall of said hood and extending upwardly therefrom"--requires a
"separate, hollow fitting affixed, set or supported on the wall

---

[4]The other disputed claims (5-6, 10, and 15) contain the
same language quoted in the second indented paragraph of claim 1,
i.e., col.7, l.41-47, except that claims 5-6 and 10 omit the
phrase "to inhibit siphoning of [the] water mixture from inside
said waste water basin through said compartment into said
outlet," while claim 15 replaces that phrase with "so as to
inhibit siphoning action from said outlet causing a drawing of
waste water from the basin," col.10, l.20-23.  Aside from BMP's
claim differentiation argument, discussed infra, the parties do
not attribute any significance to these differences in construing
the phrase at issue, which appears in each of the disputed
claims.  So the court will not refer to these other disputed
claims further, citing to the language of claim 1 only.

of the outlet hood, . . . having a lower end communicating with a hole in the outlet hood and an upper end extended upwardly from the wall to a position above the wall . . . so that the upper end terminates above flood level."  Under this construction, NEF argues, its products do not infringe, because they achieve anti-siphon venting through the use of a hole in the hood, rather than the "separate fitting" NEF claims is required by the patent.[5]


III. **ANALYSIS**

Neither party asserts that the patent expresses an intent to impart a novel meaning to the phrase "a vent mounted on the wall of said hood and extending upwardly therefrom" or that the phrase lacks clarity.  Instead, each contends that the language of the claims and other intrinsic evidence supports its construction.  NEF, as just noted, construes the phrase as a "separate, hollow fitting affixed, set or supported on the wall of the outlet hood,

---

[5]Though the relationship between the claims and the allegedly infringing products has no relevance to the claim construction inquiry itself, a court cannot legitimately exercise its judicial power to undertake the inquiry without an actual controversy as to whether the claims cover the products.  See Vivid Techs., Inc. v. Am. Science & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) ("although the claims are construed objectively and without reference to the accused device, only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").  Of course, the court expresses no view on the issues of infringement or validity at this stage.

the hollow fitting having a lower end communicating with a hole in the outlet hood and an upper end extended upwardly from the wall to a position above the wall of the outlet hood so that the upper end terminates above flood level," while BMP construes it as "an opening positioned on the hood wall that provides air communication between the lower interior hood compartment and the upper ambient air when the hood is installed."

"Claim construction begins with the language of the claims." Research Plastics, Inc. v. Fed. Packaging Corp., 421 F.3d 1290, 1295 (Fed. Cir. 2005).  Although the court has little doubt that the word "vent," taken in isolation, could mean simply "opening" as BMP suggests, the remainder of the claim language contradicts this construction.  "While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms."  ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003).  The phrase "a vent mounted on the wall of said hood and extending upwardly therefrom" contains three qualifiers which, in the court's view, make clear that "vent" is not synonymous with "opening" as BMP suggests:  "mounted," "extending upwardly," and "therefrom."

8

First, the court disagrees with BMP that the ordinary meaning of "mounted" encompasses the "positioning" of an opening in a structure.  One does not commonly speak of "mounting" an opening in a wall, but, as NEF argues, of "making," "cutting," "punching," or "inserting" it.  See Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188, 1193 (Fed. Cir. 2005) (applying "ordinary meaning of 'mounted on,' i.e., securely attached, affixed, or fastened to"); Kinzenbaw v. Case, LLC, 318 F. Supp. 2d 778, 793 (N.D. Iowa 2004) (construing "mounting" in patent claim "to have its plain meaning which is 'to fix securely to a support'"), aff'd, 179 Fed. Appx. 20 (Fed. Cir. 2006) (unpublished disposition).  The interpretation of "mounted" as "affixed," as NEF suggests, finds further support in the use of the verb in the phrase "mounting of the hood to the interior wall of the wastewater basin" in the very same claim.  '817 patent, col.7, l.44-45.[6]  Just "positioning" the hood on the wall of the basin, rather than "affixing" it there, would not "define at least a partially sealable compartment" as the claim requires.  '817 patent, col.7, l.36-37.  Because "[a] word or phrase used

---

[6]The claim likewise refers to the invention as "[a]n apparatus for mounting around an outlet of a waste water basin," '817 patent, col.7, l.28-29, and containing "a mounting flange located to at least partially surround the compartment around the outlet," id., col.7, l.48-49.

9

consistently throughout a claim should be interpreted consistently," Phonometrics, Inc. v. N. Telecom, Inc., 133 F.3d 1459, 1465 (Fed. Cir. 1998), "mount" cannot mean simply "position" when used in reference to the vent when the verb necessarily means "affix" when used in reference to the hood. See Asyst Techs., 402 F.3d at 1193-94 (construing "mounted on" in patent claim to mean "affixed to" where "[t]he specification uses the phrase 'mounted on' to refer to a number of other components, and the context makes clear that the phrase is used in those instances to mean securely affixed to objects").

The court also disagrees with BMP's argument at the Markman hearing that "mounted" is synonymous with "positioned" in a more general sense--though, as just noted, it is the specific usage of a term in the patent, rather than in unrelated contexts, that determines its proper construction.  In any event, "mounted" is narrower than "positioned" in that "mounting" denotes the placement of one object in a contiguous spatial relationship with another object, while "positioning" can mean simply the placement of any single object in space, without reference to another object.  The court agrees with NEF, then, that the use of the term "mounted" to describe the "vent" requires the vent to consist of an object "separate" from the hood wall.

Second, the court disagrees with BMP that an "opening" can "extend" as that word is commonly understood, _i.e._, to reach from one point to another.   Cf. Intamin, Ltd. v. Magnetar Techs., Corp., 483 F.3d 1328, 1336 (Fed. Cir. 2007) (upholding construction of "length" in phrase "extend the length of" as "extent from end to end" because, inter alia, "[t]he verb 'extend' already suggests that the 'length' reaches from one end to another"); Kinzenbaw, 318 F. Supp.2d at 793 ("'extend' means 'to stretch out in distance, space, or time'").   This is particularly true when the claim uses "extending" in conjunction with the modifier "upwardly," indicating not only a distance between two points, but in a particular direction.   Cf. Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1362 (Fed. Cir. 2006) (construing "extend" as it appeared in claim to mean "extend upwardly").

As with its proffered construction of "mounted" to mean simply "positioned," BMP argues that "extend" refers "simply to the positioning of the vent on the hood," but, just as "position" has a broader meaning than "mount," that verb also has a broader meaning than "extend," which, again, requires its object to cover a distance between two points.   Also as in the case of "mounted," this conclusion finds further support in the use of "extending" elsewhere in the claim to refer to "a hood extending along an

11

axis," '817 patent, col.7, l.34, as well as language elsewhere in the patent using "extend" in the same sense.  See id., col.1, l.56-57 (describing feature of prior art as "[a]n outlet fitting [that] extends upward"); id., col.2, l.63-65 (describing feature of invention as "hood [that] is sealably mounted to the basin wall around its outlet and extends downwardly below it"), id., col.4, l.9-11 (describing feature of embodiment as flange with "bottom segment that extends laterally and horizontally from the body").

Taking the word "extending" to signify only that the vent is positioned in the hood wall would also essentially read the word out of the claim, because the phrase "mounted on the wall of said hood" already specifies the location of the vent vis-a-vis the hood wall.  It is, of course, a fundamental tenet of claim construction that "claims are interpreted with an eye toward giving effect to all terms in the claim."  Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006).  BMP maintains that its proffered construction does not offend this principle because, unlike "mounted," the term "extending" specifies that the vent "is positioned to provide air communication between the lower interior hood compartment and the upper ambient air when the hood is installed in the catch basin."  But this argument simply makes "extending" superfluous in light of other language

12

in the claim that itself describes the vent as "opening into the compartment to provide air communication with the compartment upon mounting of the hood to the interior wall of the waste water basin." '817 patent, col.7, l.42-44.  In addition, because it is the hood wall that defines a partially sealable compartment within the waste water basin, any vent in that wall will necessarily provide communication with the ambient air in the basin, which completely surrounds the wall; in light of this reality, "extending" must signify something more than just the "positioning" of the vent in relation to the wall.

Third, the claim describes the vent as "extending upwardly therefrom"--i.e., from "the wall of said hood"--further indicating that the vent reaches from the wall to some point beyond it, rather than consisting merely of an opening in the wall.  BMP disputed this conclusion at the <u>Markman</u> hearing, arguing that the phrase referred to an opening "extending upwardly" from the inside wall of the hood to the outside wall of the hood.  Based on the principle that a pronoun refers to its nearest antecedent noun, however, the "there" in "therefrom" refers to the "hood," not to its "wall."  <u>See In re Hyatt</u>, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.").

And, grammatical technicalities aside, one would expect the disputed phrase to refer specifically to the hood's inside wall if BMP's construction were correct--just as the claim refers specifically to "the interior wall of the waste water basin" as the place for the "mounting of the hood" itself. '817 patent, col.7, l.44-45. Indeed, the specification teaches that "[a]n anti-siphon vent mounted to the <u>hood</u> extends upwardly therefrom," <u>id.</u>, col.2, l.27-28 (emphasis added), removing even the slightest doubt that the vent extends upwardly from the hood, rather than from its interior wall. The court agrees in substance with NEF that "extending upwardly therefrom" requires the vent to have "a lower end communicating with a hole in the wall of the outlet hood and an upper end extending upwardly from said hood to a position above said hood."[7]

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Because the

---

[7]In NEF's proffered construction, the upper end extends upwardly from the wall, rather than the hood, but this construction is inconsistent with the claim and the specification for the reasons just discussed.

words at issue--"vent," "mounted," and "extending upwardly therefrom"--are "commonly understood," and the parties agree that those words as used in the claim simply have their "widely accepted meaning," this appears to be such a case.   Accordingly, the court need consider the remaining intrinsic evidence for the sole purpose of "determining if a deviation from the clear language of the claims is specified."   <u>Interactive Gift</u>, 256 F.3d at 1331; <u>accord</u> <u>Phillips</u>, 415 F.3d at 1316-17 (observing that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess" or "an intentional disclaimer, or disavowal, of claim scope by the inventor").

The parties point to nothing in the specification that would justify a departure from the clear language at issue here.   And BMP cites to only three passages from the specification in support of its proffered construction.   First, based on statements describing the "object of the present invention" as "to provide a means for equalizing pressure between a catch basin and its outlet pipe" and "to provide a discharge path for gases," '817 patent, col.2, l.48-54, BMP argues that one skilled in the art would "understand that the primary purpose of the vent is to provide air communication," which could be achieved by a simple

hole in the hood wall.[8]  BMP makes a similar argument based on
the teaching in the specification that "[t]he anti-siphon vent is
sized to equalize air pressure between the compartment enclosed
by the hood and ambient air above the basin."  Id., col.3, l.1-3.

When a claim discloses a particular structure, however, its
literal scope is limited to that structure, and does not extend
to different structures that happen to have the same "purpose."
See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F.3d
558, 589 (Fed. Cir. 2000) ("language reciting . . . structure
narrows the literal scope of the claim"), rev'd on other grounds,
535 U.S. 722 (2002); Wright Med. Tech., Inc. v. Osteonics Corp.,
122 F.3d 1440, 1443 (Fed. Cir. 1997) (disagreeing with
construction of term to include every structure "that meets the
functional objective of the invention"); Envtl. Instruments, Inc.
v. Sutron Corp., 877 F.2d 1561, 1564 (Fed. Cir. 1989) (rejecting
argument to extend the literal scope of a claim beyond its
language to the patent's "teachings").  Whatever the
specification might disclose to a skilled artisan about the
"purpose" of the vent described in the claims, that teaching
cannot broaden their literal language without ignoring the

---

[8]The court notes at the outset that these statements
describe the object of the invention as a whole, rather than the
"vent" required by the claims, and therefore shed little light on
the elements of the vent set forth in the claims.

"bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Innova/Pure Water, Inc., 381 F.3d at 1115.

BMP also argues that, because the specification distinguishes between the terms "vent" and "vent pipe" in two places, "vent" cannot refer only to a structure comprised of a "pipe" in the manner NEF suggests. But NEF does not propose to limit the scope of "vent" to a "pipe," but to a "separate hollow fitting"--a limitation that is consistent with the parts of the specification describing the "vent" as a "vent pipe," which is simply one example of a "separate hollow fitting."[9] Indeed, the written description specifically contemplates that such a fitting may form part of the vent, teaching that "[t]he vent can be open, but preferably is terminated either with a filter . . . or a with a flapper valve . . . . Other fittings adapted to control the flow of air and to prevent the entrance of water can be used." '817 patent, col.4, l.35-40 (references to figure omitted).

As this passage indicates, the embodiments disclosed in the parts of the specification relied on by BMP actually support

---

[9]Furthermore, as emphasized by NEF in its briefing and at the Markman hearing, other parts of the specification appear to use the terms interchangably. See '817 patent, col.4. l.32-34 (referring to same structure in figs. 1-4 as both "vent" and "vent pipe"); id., col.7, l.3-8 (referring to same structure in fig. 12 as both "vent pipe" and "vent").

NEF's reading of the disputed claim language.  One of those
embodiments teaches that the "[v]ent can be formed of a PVC vent
pipe and <u>mounted to</u> the upper part of the wall . . . .  [A]n
<u>upper end</u> of vent pipe is provided with a 90° elbow."  '817
patent, col.4, l.32-35 (emphases added; references to figure
omitted).  The other describes "a pressure-equalization vent
having a vent pipe whose <u>end segment</u> is bent back."  <u>Id.</u>, col.6,
l.53-54 (emphasis added; references to figure omitted).
Consistent with the claim language "a vent mounted on the wall of
said hood and extending upwardly therefrom," these embodiments
thus disclose an independent structure affixed to the hood wall
and having an "end," rather than merely an "opening" in the hood
wall.  The same is true of the other disclosed embodiments, which
describe the vent as "sufficiently long so that its upper end
terminates above flood level," <u>id.</u>, col.5, l.64-65, and refer to
"a float valve assembly . . . mounted to a flange at the end of
[the] vent pipe," <u>id.</u>, col.7, l.9-11.  Indeed, in discussing this
particular embodiment, the patent explains that, while "[t]he
vent pipe is made sufficiently long so that its end segment is
above static level and a liquid normally cannot enter the vent
pipe," the float valve serves to prevent this from happening even
when "as a result of heavy rains, the incoming mixture may reach

18

a flood level" in the catch basin higher than the "static level."
<u>Id.</u>, col.6, l.57-65 (references to figure omitted).

BMP argues that relying on these embodiments to limit the
scope of "vent" flies in the face of the well-settled rule
against reading limitations from the embodiments into the claims.
<u>Innova/Pure Water</u>, 381 F.3d at 1117.  As the Federal Circuit has
explained, however, "claims 'must be read in view of the
specification, of which they are a part.'"  <u>Phillips</u>, 415 F.3d at
1315 (quoting <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967,
978 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996)).  So,
"[a]lthough claims need not be limited to the preferred
embodiment when the invention is more broadly described, neither
do the claims enlarge what is patented beyond what the inventor
has described as the invention."  <u>Inpro II Licensing, S.A.R.L. v.
T-Mobile USA, Inc.</u>, 450 F.3d 1350, 1355 (Fed. Cir. 2006)
(internal quotation marks omitted).  As discussed <u>supra</u>, the
clear language of the claims does not allow "vent" to be
construed as "opening"; the description of the embodiments simply
confirms this conclusion.  "The construction that stays true to
the claim language and most naturally aligns with the patent's
description of the invention will be, in the end, the correct
construction."  <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158
F.3d 1243, 1250 (Fed. Cir. 1998).

Accordingly, the court cannot adopt BMP's proffered construction of "a vent mounted on the wall of said hood and extending upwardly therefrom" to mean "an opening positioned on the hood wall that provides air communication between the lower interior hood compartment and the upper ambient air when the hood is installed."  As NEF persuasively argues, this construction reads <u>all</u> of the limitations on "vent" out of the disputed phrase because, as noted <u>supra</u>, the balance of the claim teaches--in language virtually identical to that proposed by BMP--that the vent "open[s] into the compartment to provide air communication with the compartment."  '817 patent, col.7, l.42-44.  BMP's reading, then, ignores the basic premise of patent law that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention."  <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 29 (1997).

While the court believes that NEF's proffered construction is more faithful to the language of the claims and specifications, the court nevertheless declines to adopt that construction in its entirety.  NEF argues that the disputed phrase means "a separate, hollow fitting affixed, set or supported on the wall of the outlet hood, the hollow fitting having a lower end communicating with a hole in the outlet hood and an upper end extended upwardly from the wall to a position

20

above the wall of the outlet hood so that the upper end
terminates above flood level."  Though "in clarifying the meaning
of claim terms, courts are free to use words that do not appear
in the claim so long as the resulting claim interpretation
accords with the words chosen by the patentee to stake out the
boundary of the claimed property," Pause Tech. LLC v. TiVo,
Inc., 419 F.3d 1326, 1333 (Fed. Cir. 2005) (internal bracketing,
ellipse, and quotation marks omitted), a court cannot read
limitations into a claim any more than it can read them out.
See, e.g., Innova/Pure Water, 381 F.3d at 1117 (quoting McCarty
v. Lehigh Valley R. Co., 160 U.S. 110, 116 (1895)).

     The court believes that NEF's proposed construction contains
a limitation unsupported in the claim language or elsewhere in
the intrinsic evidence, namely, "so that the upper end terminates
above flood level."  NEF finds its sole support for this phrase
in the embodiments, discussed supra, containing a float valve
assembly to prevent the liquid in the catch basin from leaking
into the vent when the liquid reaches a "flood level" exceeding
the length of the vent pipe.  The other disclosed embodiments of
the invention, however, do not include the float valve assembly;
in those embodiments, "[t]he vent pipe is made sufficiently long
so that its end segment is above the static level and a liquid
normally cannot enter the vent pipe."  '817 patent, col.6, l.57-

21

60 (emphasis added; references to figure omitted).  The patent
further explains that "[u]nder normal conditions . . . [this]
static level coincid[es] with respective lower segments" of the
inlet and outlet pipes of the catch basin "but above the bottom
edge where the intake to [the] compartment of [the] hood begins."
Id., col.5. l.18-21 (references to figures omitted).  Because the
patent clearly discloses embodiments in which the vent terminates
above this static level, rather than above flood level, the court
cannot read the limitation "so that the upper end terminates
above flood level" into the claims.[10]  See, e.g., Innova/Pure
Water, 381 F.3d at 1117.

The court also disagrees with NEF that BMP is estopped from
seeking its proffered construction of "a vent mounted on the wall
of said hood and extending upwardly therefrom" by the prosecution
history of the '817 patent.  NEF argues that, after the examiner
rejected what are now claims 5 and 6, the patentees amended them

---

[10]The court also declines to construe mounted as "affixed,
set or supported" in the manner NEF suggests.  In this context,
"set" and "supported" are merely synonyms of "affixed," and
therefore lend no additional content to the construction of the
disputed phrase; courts must guard against this kind of "over-
construction" of patent claims.  "An overly precise or specific
interpretation of claim language, especially language with a
plain meaning, may be deemed excessive in that it invades the
province of the trier of fact."  5A Donald A. Chisum, Chisum on
Patents § 18.03[1][b], at 18-93--18-94 (2001 & supp. 2006)
(footnote omitted).

to include the disputed limitation, giving rise to the inference that the limitation was necessary for patentability.  <u>See generally</u> <u>Warner-Jenkinson</u>, 520 U.S. at 33.  But, as BMP points out, those claims--which were eventually allowed as independent claims--had been submitted as claims dependent on claim 1, which in its original form contained the limitation "a vent mounted on the hood of said wall and extending upwardly therefrom."  Letter from Louis H. Reens & Yuri Kateshov to Ass't Comm'r for Patents, at 2 (Mar. 20, 2000).  And the examiner had not rejected what are now claims 5 and 6, but simply objected to them as "dependent upon a rejected base claim," explaining that they "would be allowable if rewritten in independent form including all of the limitations of the base claim," Official Action, USPTO, at 5 (Dec. 22, 1999)--which, as just noted, already contained the limitation at issue.[11]  By rewriting the dependent claims at issue to include this limitation, then, the patentees did not narrow them to avoid prior art in a manner giving rise to prosecution history estoppel.  <u>See</u> <u>Festo</u>, 535 U.S. at 737.  So

---

[11]Claim 1 was initially rejected as unpatentable because the examiner believed that prior patents had made the proposed invention obvious.  Though the patentees eventually overcame this rejection, they did not do so by adding the disputed limitation, which, again, was contained in claim 1 as originally submitted.

the court has not relied on that doctrine in adopting in part NEF's proffered construction of the disputed phrase.[12]

Finally, BMP argues that, because claim 7 discloses the apparatus "as defined in claim 6 wherein the vent is a pipe," '817 patent, col.8, l.61-62, the doctrine of claim differentiation requires claim 6 to be read broadly enough to encompass a version of the invention wherein the vent is _not_ a pipe.  As an initial matter, because the court construes the disputed phrase, in part, as "a separate hollow fitting," claim 6--as well as all of the other claims at issue--could encompass a vent comprised of structure besides a pipe, as already discussed.

Furthermore, "the doctrine of claim differentiation is not a hard and fast rule," but simply "create[s] a presumption that each claim in a patent has a different scope," and "[t]hat presumption is especially strong when the limitation in dispute

---

[12]The court considers the prosecution history relevant to the language at issue only insofar as it reveals yet another example of the patentees speaking of the vent as a "vent pipe."  In describing the invention generally--_i.e._, not in reference to any particular claim or embodiment--the patentees stated, "A vent pipe is provided on the hood so that the compartment formed between the hood and the wall of the basin is maintained at outside air pressure.  This inhibits the siphoning of liquid." Letter from Reems & Kateshov, _supra_, at 9-10.  "Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term."  _C.R. Bard, Inc. v. U.S. Surgical Corp._, 388 F.3d 858, 864 (Fed. Cir. 2004).

is the only meaningful difference between an independent and
dependent claim." <u>SunRace Roots Enter.</u>, 336 F.3d at 1302-03
(internal quotation marks omitted).  Here, "pipe" is not the only
meaningful difference between independent claim 6 and its
dependent claim 7: claim 7 discloses not only a pipe, but that

> the upper end of the vent pipe has a floatable element
> . . . so as to prevent . . . liquid from entering the
> sealable compartment through the vent pipe when the
> . . . liquid rises in the waste water basin to move the
> floatable element to seal the vent pipe.

'817 patent, col.8, l.62-67.  This disclosure, which appears to
correspond to the vent equipped with the float valve discussed
<u>supra</u>, contains a number of limiting elements besides "pipe"
itself.  As the Federal Circuit has instructed, "that the claims
are presumed to differ in scope does not mean that every
limitation must be distinguished from its counterpart in another
claim, but only that at least one limitation must differ."  <u>Kraft</u>
<u>Foods, Inc. v. Int'l Trading Co.</u>, 203 F.3d 1362, 1368 (Fed. Cir.
2000).  Because there are a number of limitations present in
claim 7 that are absent from claim 6, the doctrine of claim
differentiation does not support BMP's view that "vent" means
simply "opening," particularly where, as discussed at length,

that reading finds no support in the language of the claims themselves, the specification, or the prosecution history.[13]

---

[13]Because the court considers the meaning of the disputed phrase clear from this intrinsic evidence, the extrinsic evidence submitted by NEF has not been considered.

IV.  **CONCLUSION**

For the foregoing reasons, the court construes the phrase "a vent mounted on the wall of said hood and extending upwardly therefrom" to mean "a separate hollow fitting affixed to the wall of said hood, said fitting having a lower end communicating with a hole in the wall of the outlet hood and an upper end extending upwardly from said hood to a position above said hood."

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

May 12, 2008
cc:  David A. Anderson, Esq.
     Richard J. Basile, Esq.
     Walter B. Welsh, Esq.
     Scott E. Daniels, Esq.

27